UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY DUMAS,

        Petitioner,

v.                                         Case Number 1:16-CV-13043
                                          Honorable Thomas L. Ludington

THOMAS MACKIE,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On August 22, 2016, Petitioner Terry Dumas filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. In the petition, Dumas challenges his convictions for first-degree felony murder, two counts of armed robbery, assault with intent to murder, two counts of torture, two counts of unlawful imprisonment, and possession of a firearm during the commission of a felony. Those convictions came following a joint trial with separate juries with co-defendants Tony Horton and Taywon Williams in the Wayne County Circuit Court. Petitioner was sentenced to life imprisonment without parole on the murder conviction, concurrent terms of 30 to 45 years imprisonment on the armed robbery, assault, and torture convictions, concurrent terms of 10 to 15 years imprisonment on the unlawful imprisonment convictions, and a consecutive term of two years imprisonment on the felony firearm conviction in 2012.

In his pleadings, Petitioner raises claims concerning the reading of the jury's verdict and the effectiveness of trial counsel. For the reasons set forth, the Court will deny the petition for a

writ of habeas corpus. The Court also deny a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I.

Petitioner's convictions arise from the shooting death of Williams Abrams and the shooting assault of Jeffrey Herron during a robbery that was planned for a drug transaction in Detroit, Michigan on August 10, 2011. As discussed by Petitioner's defense counsel in his brief on appeal, the Michigan Court of Appeals summarized the incident in co-defendant Taywon Williams' appeal case as follows:

> [Petitioner's] convictions arise from his participation with six other assailants in a criminal episode to rob Jeffrey Herron and William Abrams during a prearranged drug transaction, which ultimately led to the death of Abrams and the shooting assault of Herron on August 10, 2011, in the city of Detroit. Herron had known [Williams] and codefendants Tony Horton, Tonyea Horton, Terry Dumas, and Christopher Lewis Herron for several years from their eastside neighborhood. Herron, acting on behalf of himself and Abrams, arranged to purchase a large sum of Oxycontin pills from Tony. The next day, Tony summoned Herron to his house, claiming to have acquired the requested drugs. Herron went to the front door, leaving Abrams in the car, and Tony told Herron to have Abrams join them. After both victims were inside, Herron noticed that the pills were not visible and inquired about them. At that moment, Williams and four other assailants emerged from hiding and ambushed the victims. They were armed with firearms and wearing rubber gloves. The victims were held at gunpoint as they were robbed, ordered to the floor, and bound with rope and duct tape. Herron testified that Williams and codefendant Lewis tied him up, and that Williams put duct tape around his head to cover his mouth. Lewis testified at trial that he tied up Herron, and Williams tied up Abrams and taped both victims' mouths. Herron testified that he and Abrams thereafter remained captive for several hours, during which they were hogtied with their hands and feet fastened behind their backs, kicked, taunted, and threatened. Eventually, the victims were "wiped down," carried from the house, and placed in the rear of Herron's car. Herron testified that Williams used a rag to wipe the tape on Herron's head. Tony, accompanied by one other assailant, drove the victims from the east side to the west side of Detroit, parked Herron's car on a side street, open the backdoor, and opened fire on both victims, killing Abrams. Herron, who had been shot in the head and chest, "play[ed] dead" until Tony and his associate left the scene.

*People v. Williams*, No. 311755, 2014 WL 2917256, *1 (Mich. Ct. App. June 24, 2014) (unpublished).

Petitioner's counsel also summarized the process the trial court adopted to accommodate the joint trial but separate juries:

> The Prosecutor gave his Horton closing argument. The next day, the Horton jury heard Defendant Horton's closing and the prosecution's rebuttal, as well as their instructions. (JT XVII p. 1-108) The Prosecutor gave his closing to the Dumas Jury. (JT XVII p. 110-130) Defendant Dumas' attorney Terry Price gave his closing the next morning. (JT XVIII p. 17-53) Now, the Horton Jury came back with a verdict, which was sealed. Judge Boykin instructed the Dumas jury. The case proceeded with closing arguments for the Williams jury.
>
> On July 2, 2012 the Dumas jury came back with a verdict, which was sealed. (JT XIX p. 15-18) However, the jury was discharged without their sealed verdicts being read in court. The Williams jury continued to deliberate, and when they returned their verdict, [it was read] (JT XIX p. 26-35) Then, the Horton verdict was unsealed and read. (JT XIX p. 35-36).

Pet. App. Brf. at 9–10 (footnotes omitted). The Court will accept Petitioner's facts as true to the extent that they are consistent with the record. The state court record further shows that the trial court polled Petitioner's jury after sealing the verdict and that each juror affirmed that the verdict in the sealed envelope was his/her true verdict. 7/2/12 Trial Tr. at 15–18. Additionally, Petitioner's verdict was unsealed and read in open court, with Petitioner and counsel present, on July 3, 2012. 7/3/12 Trial Tr. at 14–15.

Following his convictions and sentencing, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims presented on habeas review. The court denied the application. *People v. Dumas*, No. 11-008346-FC (Mich. Ct. App. Dec. 19, 2014). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Dumas*, 499 Mich. 880, 876 N.W.2d 533 (2016).

Petitioner thereafter filed his federal habeas petition. He raises the following claims:

I. His convictions must be vacated where the sealed verdict of the jury was not read in open court and where the verdict transcript was unavailable.

II. He is entitled to a new trial where his trial counsel was unprepared for trial and did not meet with him to prepare for trial.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). *See also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits

a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). *See also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted). *See also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id. See also White v. Woodall*, 134 S. Ct.

1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412. *See also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court'") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). *See also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam). *See also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d

488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

#### A.

Petitioner first asserts that he is entitled to habeas relief because the sealed verdict of the jury was not read in open court and the verdict transcript was unavailable. Petitioner raised this claim on direct appeal and the Michigan Court of Appeals denied his delayed application for leave to appeal. The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

As an initial matter, Petitioner fails to cite any Supreme Court precedent which requires that a verdict be read in open court as a matter of federal constitutional law. And there is no such requirement. *See, e.g., Adeniji v. United States*, No. 6:10-CR-20-ORL-28DAB, 2012 WL 1571538, *3 (M.D. Fla. May 3, 2012) (rejecting similar claim in part because the petitioner failed to cite Supreme Court precedent requiring that jury must reach a unanimous verdict or that jury must return its verdict in open court); *Lamon v. Adams*, No. 1:09-cv-00514-OWW-SMS (HC), 2009 WL 3857411, *9 (E.D. Cal. Nov. 17, 2009) (denying habeas relief on claim that murder conviction should be reversed because verdict was not read aloud in open court and acknowledged by jury because there was no federal constitutional violation and claim was factually flawed).

There is also no constitutional right to poll the jury. *See Simmons v. Napier*, 626 F. App'x 129, 141 n. 4 (6th Cir. 2015) (citing *Verser v. Barfield*, 741 F.3d 734, 738 (7th Cir. 2013)); *Cabberiza v. Moore*, 217 F.3d 1329, 1336-37 (11th Cir. 2000) (collecting cases); *Hunter v. Ohio Attorney General*, No. 1:16-cv-561, 2017 WL 1881342, *33 (S.D. Ohio May 9, 2017) (unpublished); *Rhea v. Jones*, 622 F. Supp. 2d 562, 593 (W.D. Mich. 2006). "[I]f there is no 'clearly established Federal law, as determined by the Supreme Court' that supports a habeas petitioner's legal argument, the argument must fail.*" Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)).

Moreover, Petitioner's claim is belied by the record. The trial transcripts reveal that the jury submitted the sealed verdict in open court, that the jury was polled, and that the jury acknowledged that the verdict in the envelope was the correct verdict. The trial transcripts further reveal that Petitioner's sealed jury verdict was read in open court on July 3, 2012. Both he and defense counsel were present at that proceeding and raised no objection to the delay in reading the verdict. While the transcript of that hearing was not available at the time of Petitioner's state court proceedings, it may nonetheless be considered by this Court on habeas review. *See Ciavone v. Woods*, No. 15-2093, 2016 WL 4174427, *2 (6th Cir. Aug. 8, 2016). Because the sealed verdict was read in open court, Petitioner cannot prevail on his claim.

Lastly, to the extent that Petitioner asserts that the trial court (or the Michigan Court of Appeals) erred under state law, he fails to state a claim upon which relief may be granted in this case. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state procedural law are not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions"). *See also Martin v. Eberlin*, No. 1:07CV1689, 2008 WL 8100809, *5-7 (N.D. Ohio May 2, 2008) (habeas petitioner not entitled to relief on claim that judge failed to announce verdict in time frame required under Ohio law because the claim concerns a matter of state law). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). *See also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is not warranted on this claim.

**B.**

Petitioner also asserts that he is entitled to habeas relief because trial counsel was unprepared for trial and failed to meet with him to prepare for trial. Petitioner raised this claim on direct appeal and the Michigan Court of Appeals denied his delayed application for leave to appeal. The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Id*.

Petitioner asserts that trial counsel was ineffective for failing to sufficiently meet with him prior to trial. Petitioner, however, admits that counsel met with him once at the jail and once in

the holding cell before trial. The record further indicates that counsel reviewed the file, questioned witnesses about their version of events, and advocated for Petitioner. The mere fact that counsel may have spent little time with Petitioner prior to trial "is not enough under Strickland, without evidence of prejudice or other defects." *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003); *accord Lenz v. Washington*, 444 F.3d 295, 303 (4th Cir. 2006) (petitioner could not prevail on claim that attorneys were ineffective due to infrequent pre-trial visits where he failed to show resulting prejudice); *Anderson v. Calderon*, 232 F.3d 1053, 1086 (9th Cir. 2000) (same). Petitioner does not explain with any specificity how additional meetings with counsel would have benefitted his defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief). *See also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).

Petitioner relatedly asserts that trial counsel was deficient for failing to investigate his case, locate and interview witnesses, and prepare a defense. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions,

counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). *See also Wiggins*, 539 U.S. at 522–23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, Petitioner fails to show that trial counsel erred or that he was prejudiced by counsel's conduct in this regard. The record indicates that counsel consulted with Petitioner during the proceedings, investigated the case, cross-examined witnesses, made relevant objections, and was prepared at trial. Petitioner was not deprived of a substantial defense. Although Petitioner asserts that counsel should have discovered additional witnesses and produced further evidence at trial, he does not provide any witness names, witness affidavits to establish their ability and willingness to testify, and/or the substance of their potential testimony. As noted, conclusory allegations are insufficient to establish that counsel was ineffective, *Cross*, 238 F. App'x at 39–40; *Workman*, 178 F.3d at 771, or to justify an evidentiary hearing on this issue. *Washington*, 455 F.3d at 733. In sum, Petitioner fails to explain what or whom trial counsel failed to investigate during the pre-trial period and/or how further investigation would have uncovered information which would have benefitted his defense and affected the outcome at trial. He thus fails to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## C.

Before Petitioner may appeal the Court's decision, a certificate of appealability must be issued. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional

right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his claims. Accordingly, a certificate of appealability will be denied. Because an appeal could not be taken in good faith, Petitioner will also be denied leave to proceed in forma pauperis. *See* Fed. R. App. P. 24(a).

## V.

Accordingly it is **ORDERED** that Petitioner Dumas's petition for a writ of habeas corpus, ECF No. 1, is **DENIED.**

It is further **ORDERED** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.

Dated: May 24, 2018
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 24, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager